IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DIRECT ENERGY BUSINESS, LLC,        )
    Plaintiff,                      )
                                    )
    v.                              ) Civil Action No. 11-1232
                                    )
ACORN MHL TECHNOLOGY, LLC; and      )
AMY LAYOUS                          )
    Defendants.                     )

MEMORANDUM

Gary L. Lancaster,
Chief Judge.                                    February 6, 2012

This is an action sounding in fraud, negligent misrepresentation, and tortious interference with contractual relations. Jurisdiction is predicated on diversity of citizenship. 28 U.S.C. § 1332. Plaintiff, Direct Energy Business, LLC ("Direct Energy"), alleges that defendants, Acorn MHL Technology, LLC and its predecessor in interest, Amy Layous (together, "Acorn"),[1] fraudulently reproduced the signature of plaintiff's predecessor in interest's Chief Operating Officer on a contract it had not agreed to. Plaintiffs seek damages and declaratory judgment that the purported contract is not valid and no money is due and owing under it.

---

[1] Layous is a principal of Acorn and has been at all relevant times.

Defendants have filed a Motion to Dismiss pursuant to Rule 12(b)(6), contending the parties agreed that any such dispute between them was to be submitted to binding arbitration.

Thus, the court must decide whether this dispute falls within the scope of a valid arbitration clause or if it is a matter for the court to review. Because we find that this dispute is within the scope of the arbitration agreement we will grant defendant's motion.

I. <u>BACKGROUND</u>

The following material facts are taken as alleged in Direct Energy's complaint. On January 26, 2005, Direct Energy's predecessor in interest, Strategic Energy LLC ("Strategic Energy") signed a Master Consulting Agreement (the "MCA") with Acorn. Under the MCA, Acorn was to provide technical support and consulting services in connection with Strategic Energy's billing, pricing, and sales software. The MCA contained the arbitration clause at issue in this case.

Pursuant to the MCA, the parties were to, and did, periodically enter into Statements of Work ("SOWs") under which Layous would provide consulting services and technical support for an agreed-upon fee to be paid in advance of the work.

On January 26, 2007, Strategic Energy and Acorn entered into such an SOW for general maintenance and support

2

which contained a stated expiration date of February 1, 2012 (the "2007 SOW"). The 2007 SOW contained the following language: "This SOW is an exhibit to and is incorporated in that Master Consulting Agreement by and between Consultant and Client dated January 25, 2005 . . . ."[2] There is no dispute that the 2007 SOW is valid and enforceable.

Over time, Direct Energy evaluated Acorn's capabilities and it lost confidence in Acorn's ability to do the job.[3] Shortly thereafter, it decided to terminate its relationship with Acorn at the expiration date of February 1, 2012 and began to look for a replacement software consulting firm. The record is not clear whether Direct Energy communicated this decision to Acorn.

In July, 2011, however, and while the 2007 SOW was still in effect, Acorn sent Direct Energy an invoice totaling $103,000.00. It asserted that the invoice was submitted pursuant to a contract between them dated June 26, 2008 (the "SOW Extension"), which purported to be a two-year extension to the 2007 SOW, which, again, was to expire February 1, 2012. The SOW Extension purported to extend the relationship between them to January 1, 2014. The SOW Extension contained the signature

---

[2] The MCA contains a corresponding provision: "Each SOW is incorporated herein by reference." An SOW is defined as a "Statement of Work executed by both Parties and referencing this Agreement."
[3] Direct Energy purchased Strategic Energy in 2008.

3

of John Dietrich, Strategic Energy's former Chief Operating Officer.

After finding no record of the SOW Extension in its files, Direct Energy began to investigate the course of dealing between Acorn and both Direct Energy and Strategic Energy. It determined that Acorn had re-used a signature page from another document on the SOW Extension, without Dietrich's permission. Accordingly, it contended the SOW Extension was entered into by forgery and refused to pay the invoice.

Acorn filed an action with the Judicial Arbitration and Mediation Service on September 12, 2011. Direct Energy filed this suit two weeks later, and moved immediately to stay the pending arbitration. Defendants responded by moving to dismiss, or, in the alternative, stay the litigation.

II. DISCUSSION

Acorn has filed a motion to dismiss contending that this dispute is subject to an arbitration clause found in the original MCA. The arbitration clause reads as follows:

> [A]ll other disputes between the Parties that arise from this Agreement shall be settled by final and binding arbitration held in Pittsburgh, Pennsylvania, in accordance with the then prevailing Comprehensive Rules for Commercial, Real Estate, and Construction Cases of the Judicial Arbitration and Mediation Service (JAMS).

4

Plaintiff does not challenge the validity of the arbitration clause itself. Rather, plaintiff challenges the validity of the entire SOW Extension, to which the original MCA, containing the arbitration clause, is incorporated.

Because we find that it is undisputed that the relationship between Direct Energy and Acorn is subject to a valid and binding arbitration agreement, and because the court finds that this dispute falls within the scope of that agreement, the court will dismiss the action, without prejudice, and deny Direct Energy's motion to stay arbitration.

A.   Arbitrability of the Dispute

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Accordingly, "'whether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.'" Id. at 649 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547 (1964)).

In resolving the arbitrability of a particular claim, however, "a court is not to rule on the potential merits of the

5

underlying claims," no matter how frivolous the claims may appear to the court. Id. at 649. Moreover, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" Id. at 650 (quoting Warrior & Gulf, 363 U.S. at 582-83). This presumption notwithstanding, "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." PaineWebber Inc. v. Hartmann, 921 F.2d 507, 513 (3d Cir. 1990). "If the court determines that . . . the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration." Id. at 511.

When a party to a contract containing an arbitration clause challenges that contract, the disposition of the dispute depends on what is challenged. If the challenge is to the entire contract, of which the arbitration clause is merely a part, the challenge must be referred to arbitration. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444-45 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-404 (1967). If the challenge is to the arbitration clause

itself, this is a gateway issue that the court must decide. Id.; Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83 (2002).

Because a valid agreement to arbitrate exists, and the SOW Extension is incorporated into and an exhibit of the MCA, it is apparent that this is a matter "that arise[s] from" the MCA. Therefore, the dispute falls within the scope of the parties' arbitration agreement and is not for the court to decide. The court will thus submit the case to binding arbitration.

B. Attorneys' Fees

Defendants have requested attorneys' fees and costs incurred as a result of Direct Energy's resistance to arbitration. Although the court found in defendants' favor, the question was not so obvious as to make Direct Energy's chance of prevailing unreasonable. Chauffeurs, Teamsters & Helpers, Local Union No. 675 v. Stroehmann Bros. Co., 625 F.2d 1092, 1094 (3d Cir. 1980) (holding that attorneys' fees may be awarded "if the party resisting arbitration did not have a 'reasonable chance to prevail'") (citation omitted).

C. Failure to State a Claim

Having concluded that the parties agreed to have this dispute decided in arbitration, the court declines to reach the merits of defendants' arguments that Direct Energy has failed to state a claim upon which relief can be granted.

III.    CONCLUSION

The parties are subject to an agreement to arbitrate this dispute, and the court will dismiss this proceeding to allow it to proceed before the arbitrator. Therefore, Defendants' Motion to Dismiss, or in the Alternative Stay, Litigation [Doc. No. 11] will be granted. Accordingly, Plaintiff's Motion to Stay Arbitration Proceedings [Doc. No. 2] will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DIRECT ENERGY BUSINESS, LLC, )
    Plaintiff, )
 )
v. ) Civil Action No. 11-1232
 )
ACORN MHL TECHNOLOGY, LLC; and )
AMY LAYOUS )
    Defendants. )

ORDER

And now, this 6th day of February, 2012, upon consideration of Plaintiff's Motion to Stay Arbitration Proceedings [Doc. No. 2], IT IS HEREBY ORDERED that the motion is DENIED. Defendants' Motion to Dismiss, or in the Alternative to Stay, Litigation [Doc. No. 11] is GRANTED, and the complaint [Doc. No. 1] is DISMISSED.

BY THE COURT,

/s/ Gary L. Lancaster
Hon. Gary L. Lancaster,
Chief United States District Judge

cc: All Counsel of Record